UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| TIM EDMONSON, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 3:23-cv-01065 |
| CAPTAIN D'S LLC, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Captain D's, LLC Motions to Dismiss and Compel Arbitration (Doc. Nos. 11 & 17).[1] For the reasons stated, Captain D's motions are **DENIED.**

I. **BACKGROUND AND FACTUAL RECORD**

The factual record before the Court is disputed on a material issue.

The parties do not dispute that Edmonson applied for employment with Captain D's and was selected for employment. (Doc. No. 22). The final step in the employment process was his completion of onboarding documentation. (Id. ¶ 13). To do that, he had to access the PeopleMatter system, a paperless onboarding system. (Id. ¶ 9). That process begins when PeopleMatter sends an email to the email address provided by the new hire with log-in information and tasks to complete the onboarding process. (Id. ¶ 10). Edmonson received an email prompting him to complete the onboarding documentation, including the Employee Dispute Resolution Plan and Agreement ("Arbitration Agreement"). (Doc. No 19-1 ¶ 7).

---

[1] Captain D's filed two motions: Doc No. 11 and 17. It appears that the certificate of service for Doc. No. 11 did not include all counsel of record, so the only properly filed motion before the Court is Doc. No. 17. The Clerk shall terminate Doc. No. 11. Doc. No. 17 is the operative motion.

At this point the record is disputed. According to Captain D's Vice President of Human Resources, Sean MacMillan, Edmonson signed the Arbitration Agreement on July 12 with the username "Trdmonson". (Doc. No. 22 ¶ 3). MacMillian avers that Edmonson is the only person who could have signed the Arbitration Agreement because PeopleMatter only sent the log-in information and documentation, including the Arbitration Agreement to him. (Id. ¶ 11). Captain D's cannot access Edmonson's email, says MacMillian, or any documents sent to him. (Id.). Thus, according to Captain D's, Edmonson is the only person who could have signed the Arbitration Agreement on July 12, (id. ¶¶ 11, 12), and Captain D's believes he did so.

Edmonson disagrees. He states that he was told to use the username "Tedmonson"—not "Trdmonson". (Doc. No. 19-1 ¶¶ 8,9). Further, Edmonson states that he did not sign the Arbitration Agreement on July 12, 2022, because he was unable to access the documents. (Id. ¶¶ 15,16). Edmonson suggests that any documents showing his signature prior to August 24, 2022 "were signed by someone other than myself." (Id. ¶ 15). Edmonson's narrative is that on July 12, 2022, he received an email instructing him to visit the PeopleMatter employee portal to complete his onboarding paperwork. (Id. ¶ 7). Then, Jen Dismukes told him his username was "Tedmonson." (Id. ¶ 8). But he could not access PeopleMatter because Dismukes set the username to "Trdmonson" in error. (Id. ¶ 9). He then goes on to explain that on July 12, 2022, Dismukes tried to fix the issue without success. (Id. ¶10). It was not until August 24, 2022, when Dismukes corrected the spelling in his username that he successfully accessed PeopleMatter. (Id. ¶ 14). As a result, he disputes that he signed the Arbitration Agreement on July 12, 2022. (Id. ¶ 16)

Edmonson offers the Declaration of Troy McClure, former General Manager at Captain D's to corroborate portions of Edmonson's story. (Doc. No. 19-6). McClure believes that Edmonson was in the dark for several weeks and "did not have the opportunity to review or sign

2

Case 3:23-cv-01065   Document 32   Filed 05/14/24   Page 2 of 5 PageID #: 302

onboarding documents, including the arbitration agreement," (id. ¶¶ 9, 10), because "he did not have access to his employee portal or a business email. (Id. ¶ 2). But it is not clear that McClure has personal knowledge, and he is mixing username and email, which does not help Edmonson.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration is simply a "matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). The Court's first task is to determine whether the parties have agreed to arbitrate their dispute. Great Earth Cos., Inc. v. Simmons, 288 F.3d 878, 889 (6th Cir. 2002). Whether an arbitration agreement was formed is determined by the court. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010). If a party establishes the existence of an agreement to arbitrate, the court must grant the party's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. Glazer v. Lehman Bros., Inc., 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). But, if the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." Great Earth Cos., 288 F.3d at 889 (quoting 9 U.S.C. § 4).

The party opposing arbitration has the burden to show a genuine issue of material fact on whether the agreement to arbitrate is valid, which mirrors the summary judgment standard. Great Earth Cos. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002). The district court must view all facts and any inferences in the light most favorable to the party opposing arbitration "and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid

3

agreement to arbitrate exists." Id. (citing Aiken v. City of Memphis, 190 F.3d 753, 755 (6th Cir. 1999). The Court is not permitted to determine the truth of any matter or weigh the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). The Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party, id., which is the case here.

## III. ANALYSIS

When determining whether a valid arbitration agreement exists, courts apply ordinary state-law principles that govern the formation of contracts.[2] Stout v J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000). It is well-established that basic contract law principles require that parties consent. See King v. Ohio Valley Fire & Marine Ins. Co., 212 Ky. 770 (1926) ("[o]ne of the essential elements of a contract, if not the most essential element is the requirement that there be an agreement between the parties."); Sweeten v. Trade Envelopes, Inc., 938 S.W.2d 383, 386 (Tenn. 1996) ("Without mutual assent (i.e., agreement), there is no contract"). If the Court finds that there is an agreement between the parties, then the claim must go to arbitration.

There is conflicting evidence on whether the parties agreed to arbitrate. Captain D's says yes, and Edmonson says no. The Sixth Circuit considered very similar facts in Bazemore v. Papa John's U.S.A., Inc., 74 F.4th 795 (6th Cir. 2023). The defendants in Bazemore moved to enforce an arbitration agreement because the plaintiff signed an arbitration agreement through an electronic system. Id. at 797. The defendants in Bazemore also argued that plaintiff had to scroll through the entire agreement before signing it. Id. at 798. Plaintiff denied ever seeing the agreement even though it contained the plaintiff's name at the bottom alongside an electronic signature and user

---

[2] The parties do not discuss what law applies. It appears that if Edmonson signed the Arbitration Agreement in Kentucky, Kentucky law applies. If he signed it in Tennessee, then Tennessee law applies. See Williams v. Smith, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014) (explaining that in Tennessee when a contract is without a choice of law provision, the law of the state in which the contract was signed governs).

4

ID. Id. The district court granted the motion to compel because the employee never affirmatively stated that he did not in fact sign the agreement. Id. The Sixth Circuit reversed because if the employee had never seen the agreement, then he could not have signed it. Id. The burden is upon the employer to prove that each party in fact assents to arbitration. Id.

The rationale in Bazemore controls here. Like the plaintiff in Bazemore, Edmonson denies signing the Arbitration Agreement. Captain D's argues he did sign it because the PeopleMatter system only sent the Arbitration Agreement to him. However, Edmonson's denial is enough on summary judgment to deny Captain D's motion. A reasonable factfinder could plainly infer that, if Edmonson could not access his account until August 24, then he could not have signed the Arbitration Agreement on July 12. Thus, there is a genuine issue of fact as to whether Edmonson signed the Arbitration Agreement. See Bazemore, 4 F.4th at 798 ("a reasonable factfinder could plainly infer that, if Bazemore had not seen the agreement, he had not signed it either. [Plaintiff's] testimony that he never saw the agreement was therefore enough to create a genuine issue as to whether he signed it.").

IV. CONCLUSION

For the foregoing reasons, Captain D's Motion to Dismiss and Compel Arbitration (Doc. No. 17) is **DENIED** and Captain D's previously filed Motion to Dismiss and Compel Arbitration (Doc. No. 11) **SHALL be terminated**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE